UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SHAWN JULY,                                               **AMENDED COMPLAINT**

                Plaintiff,                          <u>Demand for Trial by Jury</u>

    -against-                                          ECF CASE
                                    Docket No. 18-cv-8431 (JKG)

CITY OF NEW YORK, individually and in their
capacities, DET. LANE, C.O. ALASAN HENRY, C.O.
WALLACE, C.O. ARIAS, C.O. LAMAR, C.O. CAI, CPT.
VISMALE, CPT. SANTOS, CPT. NORTON, WARDEN
SAUNDERS and JOHN or JANE DOES 1-10,

                Defendants.

------------------------------------------------------------------------X

      Plaintiff, Shawn July, by and through the undersigned attorneys, Sim & DePaola, LLP,

for his Amended Complaint against the Defendants, City of New York, individually and in their

official capacities, Det. Lane, C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O.

Cai, Cpt. Vismale, Cpt. Santos, Cpt. Norton, Warden Saunders and John or Jane Does 1-10,

alleges and states as follows:

## <u>PRELIMINARY STATEMENT</u>

1.     This is a civil rights action, in which plaintiff seeks relief, vis-à-vis 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988, the common law of the State of New York, in addition to the self-

executing clauses or implied private causes of action of the New York State Constitution, for the

violations of his civil rights, as guaranteed and protected by the First, Fourth, Fifth, Sixth and

Fourteenth Amendments to the Constitution of the United States, as well as the Laws and

Constitution of the State of New York.

2.     The following claims arise from a May 9, 1999 incident, in which the NYPD defendants,

acting under color of state law, unlawfully stopped, questioned, searched, arrested and detained

Mr. July inside of his friend's residence, within the County of Queens, City and State of New York. Mr. July was subsequently charged with one count of Criminal Possession of a Controlled Substance. As a result, Mr. July was deprived of his liberty and suffered various physical, emotional and psychological injuries. Mr. July was initially wrongfully detained over the course of approximately five days, until he was able to post bail. He was maliciously prosecuted and denied his right to a fair trial from the date of his criminal court arraignment, until the criminal proceedings were unconditionally dismissed on or about September 28, 2015.

3.      Plaintiff seeks monetary damages (compensatory and punitive) against defendants, an award of costs and reasonable attorneys' fees, and such other and further relief as this Court may deem just and proper.

4.      Within 90 of the claims herein, plaintiff timely serve notices of claim, upon the City of New York.

5.      Over 30 days have elapsed since the filing of said notices, and this matter has not been settled or otherwise disposed of.

6.      Plaintiff has complied with municipal defendant's request for an oral examination, pursuant to Section 50-H of the New York General Municipal Law or no such request was made within the applicable period.

7.

## JURISDICTION

8.      This action arises under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as the Laws and Constitution of the State of New York.

9.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

10.     Venue is properly laid within the Southern District of New York, as defendant, City of New York, is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

11.     Plaintiff, Shawn July is a Black male, who resides in the Essex County, New Jersey.

12.     Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

13.     At all times relevant hereto, defendant City, acting through the New York City Police Department ("NYPD") and the New York Department of Corrections ("DOC"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD and DOC matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all NYPD and DOC personnel, including police officers, detectives, sergeants, lieutenants, corrections officers, captains and other supervisory officers or officials, as well as the individually named NYPD and DOC defendants herein.

14.     In addition, at all times here relevant, defendant, City, was responsible for enforcing the rules or regulations of the NYPD and DOC, and for ensuring that the NYPD and DOC personnel obey the laws and constitutions of the United States and the State of New York.

15.     Defendant, Det. Lane ("Lane"), was, at all times here relevant, a police officer or detective employed by the NYPD and, as such, was acting in the capacity of an agent, servant

and employee of the defendant, City of New York. Defendant Lane was, at the times relevant herein, a police officer or police detective, under Shield No. 04910, assigned to 101st NYPD Precinct. Defendant Lane is believed to be formerly known as (f/k/a) Police Officer Pizarro, plaintiff's arresting officer on May 9, 1999. Defendant Lane is being sued in his/her individual and official capacities.

16.     Defendants, Warden Saunders, CO Alasan Henry, CO Wallace, CO Arias, CO Lamar, CO Cai, Cpt. Vismale, Cpt. Santos and Cpt. Norton, were, at all times here relevant, corrections officers or supervisors employed by the DOC and, as such, was acting in the capacity of an agent, servant and employee of the defendant, City of New York. Defendants, at the times relevant herein, were assigned to the Vernon C. Bain Correction Center on Rikers Island. Defendant are being sued in their individual and official capacities.

17.     At all relevant times, defendants John or Jane Does 1 through 10 were police officers, detectives, corrections officers, supervisors, policymakers or officials employed by the NYPD, DOC or City of New York.  At this time, Plaintiff does not know the true names or tax registry numbers of defendants, John or Jane Does 1 through 10, as such knowledge is within the exclusive possession of defendants.

18.     At all relevant times herein, defendants John or Jane Does 1 through 10 were acting as agents, servants and employees of the City of New York, DOC or the NYPD. Defendants John or Jane Doe 1 through 10 are being sued in their individual and official capacities.

19.     At all relevant times herein, defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City or State of New York.

## FACTUAL CHARGES

20.     On, or about, May 9, 1999, plaintiff arrived in New York City to visit a friend in Queens County, New York.

21.     While plaintiff was inside visiting with his friend, several officers or detectives of the NYPD, including defendant Lane and John or Jane Does 1-5 approached the entrance to the residence.

22.     Defendants Lane and Does 1-5 proceeded to knock on the door, which was answered by plaintiff's friend.

23.     Defendants Lane and Does 1-5 then immediately rushed into the residence with their guns drawn and without consent, a duly authorized search warrant or probable cause to do so.

24.     Upon their forcible and illegal entry, defendants Lane and Does 1-5 ordered everyone to stop and show their hands.

25.     Defendants Lane and Does 1-5 then informed the occupants that they believed plaintiff and his friends to be in possession of information regarding a crime that was committed several days earlier.

26.     Defendants Lane and Does 1-5 proceeded to physically search the entire residence, including everyone inside, in a clear effort to recover incriminating evidence to be used as leverage to obtain their sought-after information.

27.     Defendants Lane and Does 1-5 eventually recovered a small amount of an illicit controlled substance on the person of plaintiff's friend and within another distinct area of the residence, in which only plaintiff's friend had access as the resident thereof.

28.     Upon the recovery of the alleged controlled substances, plaintiff's friend informed Defendants Lane and Does 1-5 that each illicit item belonged to her and that no one else had any knowledge regarding their presence.

29.     Defendants Lane and Does 1-5 proceeded to inform the individuals then present that they were not concerned about the small quantity of illicit drugs.

30.     Defendants Lane and Does 1-5, however, stated that plaintiff and another individual had to come to the precinct for questioning regarding the other crime.

31.     Plaintiff was then handcuffed and removed to the precinct by Defendants Lane and Does 1-5.

32.     Plaintiff was then subjected to hours of questioning by Defendants Lane and Does 1-5 without being informed of his rights under *Miranda*.

33.     Plaintiff informed Defendants Lane and Does 1-5 that he did not have any information regarding the incident they were interested in, as he was not even present in New York State on the date the alleged crime occurred.

34.     Defendants Lane and Does 1-5 then threatened to charge plaintiff with the drugs they recovered from plaintiff's friend, if he did not provide the demanded information.

35.     Plaintiff told Defendants Lane and Does 1-5 that they could not do that.

36.     Defendants Lane and Does 1-5 responded that they would do whatever they wanted if plaintiff did not render the demanded assistance.

37.     Plaintiff insisted that he could not provide Defendants Lane and Does 1-5 with the information they wanted, because he simply did not know anything.

38.     Defendants Lane and Does 1-5 refused to release plaintiff and instead charged him with the drugs they recovered from plaintiff's friend, despite being fully aware that the drugs were not his and that he never had any knowledge of their existence.

39.     Defendants Lane and Does 1-5 were fully aware that plaintiff did not reside in the residence where the contraband charged to plaintiff was recovered and that no contraband was recovered or ever observed on his person.

40.     Defendants Lane and Does 1-5 were fully aware that plaintiff never exerted any dominion or control over any illicit substances.

41.     Defendants Lane and Does 1-5 suppressed exculpatory evidence, namely the admissions of plaintiff's friend.

42.     Defendants Lane and Does 1-5 fabricated evidence to be used against plaintiff in the form of their false observations and accounts, including plaintiff's resident address, the locations where the contraband was recovered, plaintiff's statements and the means by which they first came into contact with plaintiff.

43.     Defendants Lane and Does 1-5 further fabricated evidence used to show that plaintiff possessed said small amounts of contraband with the intent to sell it, so that plaintiff would be charged with a felony instead of a misdemeanor.

44.     As a result, plaintiff was prosecuted for criminal possession of a controlled substance in the third degree and possession of a weapon in the fourth degree and had bail set at his criminal court arraignment.

45.     Plaintiff was unlawfully detained for approximately two more days, until he was able to make bail.

46.     Plaintiff immediately returned to his resident state of New Jersey.

47.     On or about May 14, 1999, plaintiff was arrested for an unrelated incident.

48.     Plaintiff was ultimately convicted and sentenced to twenty-years incarceration.

49.     A bench warrant was issued against plaintiff on or about October 29, 1999 due his failure to appear at his New York Criminal Court date.

50.     Said warrant resulted in a detainer being lodged against plaintiff, which adversely impacted plaintiff's New Jersey criminal sentence.

51.     The New York malicious prosecution resulted in plaintiff's exclusion from numerous early release programs and other benefits that he would have otherwise been entitled to receive.

52.     After filing a motion to resolve the New York criminal proceedings, plaintiff was removed to VCBC on Rikers Island.

53.     On or about September 16, 2015, at around 6:40 p.m, defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai conducted a search in the unit where plaintiff was detained.

54.     During said search, defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai engaged in a dispute with another inmate, which caused defendants to spray a chemical agent, believed to MK9, on the offending inmate as well as every other inmate in the block.

55.     Plaintiff was afflicted with the noxious fumes, which caused him to uncontrollably cough and reflexively raise his hands to his mouth.

56.     Defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai then proceeded to violently strike plaintiff all about his body and head, causing him to endure substantial pain and suffering.

57.     Plaintiff was thereafter arrested and prosecuted for assaulting defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai, despite defendants' full knowledge that plaintiff had never committed any such acts.

58.     Defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai sprayed plaintiff with MK9 depsite plaintiff's full compliance with their orders and commands at all times.

59.     While restrained with handcuffs, defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai attempted to twist and break plaintiff's wrists.

60.     Plaintiff was thereafter denied or refused medical treatment his significant injuries, which resulted in even worse ones.

61.     Defendant Cpt. Vismale authorized or directed the vicious attacks on plaintiff by defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai, as she was their immediate supervisor.

62.     Defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai ridiculed and threatened plaintiff with further torture and pain in the immediate presence of Cpt. Vismale, including stating that defendants should "beat his ass a little more."

63.     To conceal her role in plaintiff's attacks, Defendatn Cpt. Vismale submitted false reports and directed others to submit false reports as well.

64.     Plaintiff filed various grievance forms and complaints with all of them being either ignored or discarded.

65.     Defendants C.O. Alasan Henry, C.O. Wallace, C.O. Arias, C.O. Lamar, C.O. Cai, Cpt. Vismale and Cpt. Norton threatened plaintiff with further physical harm and the destruction of his property if he filed another grievance or complaint.

66.     Plaintiff asserts that the defendants who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD, DOC and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD, DOC and City of New York or, at the very least, conclusive evidence that the City and the NYPD and DOC have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

67.     The individually named defendants herein, as well as other officers serving in the employ of the NYPD, DOC and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, DOC the City of New York and their respective policymakers and supervisors.

68.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are various articles and reports detailing the magnitude and overwhelming prevalence of incidents, in which NYPD officers were caught lying, including instances that resulted in the arrest and imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate

corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via some incontrovertible form of evidence.

69.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

70.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's

failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

71.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

72.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

73.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate

individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

74.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in plaintiff's arrest without probable cause.

75.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

76.     Defendants' actions, pursuant to plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

77.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion

of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

78.     Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

79.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including defendants.

80.     Upon information and belief, the NYPD, DOC and City of New York and have failed, or outright refused, to correct the individually named defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

81.     The aforementioned acts of defendants directly or proximately resulted in the deprivation or violation of plaintiff's civil rights, as guaranteed and protected by the First, Fourth, Fifth,

Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

82.     As direct or proximate results of said acts, plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.


**FIRST CAUSE OF ACTION**
First Amendment Retaliation Claim Under
New York State Law

83.     Plaintiff re-alleges and re-avers Paragraph 1 through 82 of this Complaint as if fully set forth herein.

84.     Plaintiff engaged in speech and activities that were protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution.

85.     Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

86.     Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

87.     Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities or by chilling his desire to further participate or engage in such protected speech or activities.

88.     Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution, were violated by defendants.

89.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings, under the doctrine of *respondeat superior*.

90.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
First Amendment Retaliation Claim Under
42 U.S.C. § 1983 Against Individual Defendants

91.     Plaintiff re-alleges and re-avers Paragraph 1 through 90 of this Complaint as if fully set forth herein.

92.     Plaintiff engaged in speech and activities that were protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution.

93.     Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

94.     Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

95.     Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities, or by chilling his desire to further participate or engage in such protected speech or activities.

96.     Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution, were violated by defendants.

97.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

98.     Plaintiff re-alleges and re-avers Paragraph 1 through 97 of this Complaint as if fully set forth herein.

99.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

100.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

101.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

102.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

103.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

104.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

105.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

106.     Plaintiff re-alleges and re-avers Paragraph 1 through 105 of this Complaint as if fully set

forth herein.

107.     Defendants subjected plaintiff and his property to unreasonable searches and seizures

without a valid warrant and without reasonable suspicion or probable cause do so.

108.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his

person and property.

109.     Plaintiff did not consent to the unreasonable searches and seizures to his person or

property.

110.     The unreasonable searches and seizures to plaintiff's person and property were not

otherwise privileged.

111.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches

and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I,

Section 12, of the New York State Constitution.

112.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## FIFTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

113.     Plaintiff re-alleges and re-avers Paragraph 1 through 112 of this Complaint as if fully set

forth herein.

114.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

115.     Plaintiff was conscious of his confinement.

116.     Plaintiff did not consent to his confinement.

117.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

118.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

119.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

120.     Plaintiff re-alleges and re-avers Paragraph 1 through 119 of this Complaint as if fully set forth herein.

121.     The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

122.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

123.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

124.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CAUSE OF ACTION
Assault and Battery Under

New York State Law

125.    Plaintiff re-alleges and re-avers Paragraph 1 through 124 of this Complaint as if fully set forth herein.

126.    At all relevant times, Defendants caused Plaintiff to fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

127.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent or justification.

128.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages.

129.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

130.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

131.    Plaintiff re-alleges and re-avers Paragraph 1 through 130 of this Complaint as if fully set forth herein.

132.    The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

133.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

134.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

135.    Plaintiff re-alleges and re-avers Paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136.    Defendants initiated the prosecution against Plaintiff.

137.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

138.    Defendants acted with malice, which, in the absence of probable cause, may be inferred.

139.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

140.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered significant damages.

141.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

142.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

143.    Plaintiff re-alleges and re-avers Paragraphs 1 through 142 of this Complaint as if fully set forth herein.

144.    Defendants initiated the prosecution against Plaintiff.

145.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

146.    Defendants acted with malice, which, in the absence of probable cause, may be inferred.

147.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

148.    Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by causing Plaintiff to remain unlawfully incarcerated after his arraignment and trial by jury

149.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### ELEVENTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

150.    Plaintiff re-alleges and re-avers Paragraph 1 through 149 of this Complaint as if fully set forth herein.

151.     Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

152.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

153.    Defendants intended to inflict substantial harm upon Plaintiff.

154.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

155.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

156.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### TWELFTH CAUSE OF ACTION
Malicious Abuse of Process Under

42 U.S.C. § 1983 Against Individual Defendants

157.    Plaintiff re-alleges and re-avers Paragraph 1 through 156 of this Complaint as if fully set forth herein.

158.    Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

159.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

160.    Defendants intended to inflict substantial harm upon Plaintiff.

161.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

162.    Defendants' actions deprived Plaintiff of his constitutional rights to free from illegal searches and seizures and to not be deprived of his liberty without the due process of law.

163.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

164.    Plaintiff re-alleges and re-avers Paragraphs 1 through 163 of this Complaint as if fully set forth herein.

165.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the District Attorney's Office.

166.    Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

167.     Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

168.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

169.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

170.     Plaintiff re-alleges and re-avers Paragraphs 1 through 169 of this Complaint as if fully set forth herein.

171.     Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the District Attorney's Office.

172.     Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

173.     Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

174.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

175.    Plaintiff re-alleges and re-avers Paragraph 1 through 174 of this Complaint as if fully set forth herein.

176.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of his liberty or property without due process of law, to the equal protection of the laws, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

177.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

178.    As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

179.    Defendants' conspiracy was motivated by a desire to inhibit or punish Plaintiff for exercising his constitutional rights, or because of some racial, otherwise class-based, invidious or discriminatory animus.

180.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

181.    Accordingly, defendants violated Plaintiff's rights, pursuant to the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

182.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

<u>**SIXTEENTH CAUSE OF ACTION**</u>
Failure to Intervene Under
New York State Law

183.     Plaintiff re-alleges and re-avers Paragraph 1 through 182 of this Complaint as if fully set forth herein.

184.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

185.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

186.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

187.     Plaintiff re-alleges and re-avers Paragraph 1 through 186 of this Complaint as if fully set forth herein.

188.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

189.     Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

190.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTHCAUSE OF ACTION
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

191.    Plaintiff re-alleges and re-avers Paragraph 1 through 190 of this Complaint as if fully set forth herein.

192.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

193.    Defendant City breached those duties of care.

194.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

195.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

196.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

197.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### NINETEENTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

198.    Plaintiff re-alleges and re-avers Paragraph 1 through 197 of this Complaint as if fully set forth herein.

199.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

200.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

201.    Defendant City, its policymakers and supervisors failed to provide adequate training or supervision to their subordinates, to such an extent that is tantamount to the City's deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

202.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

203.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

204.    Defendant City's conduct caused the violation of plaintiff's civil rights enumerated within the Constitution of the United States.

205.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.


**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)      In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)      Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)      Awarding Plaintiff reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and

New York Civil Rights Law, Art. VII, § 79-n; and

**e)**      Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: December 20, 2019

Respectfully submitted,

 S/ Samuel C. DePaola     
By: Samuel C. DePaola, Esq.
Bar Number: SD0622
Sim & DePaola, LLP
*Attorneys for Mr. July*
4240 Bell Blvd, Ste 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com
